Scott Wellman, SBN: 82897
Chris Wellman, SBN: 304700
**WELLMAN & WARREN LLP**
24411 Ridge Route, Suite 200
Laguna Hills, CA 92653
Tel: (949) 580-3737
Fax: (949) 580-3738
swellman@w-wlaw.com

Attorneys for Plaintiff,
ByDzyne, Inc.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### SOUTHERN DIVISION

| | |
|---|---|
| BYDZYNE, INC., a Wyoming corporation., <br><br> Plaintiff, <br><br> v. <br><br> SAMER YORDE, an individual; <br><br> Defendant. | Case No. <br><br> **COMPLAINT FOR :** <br> 1. **BREACH OF WRITTEN CONTRACT** <br> 2. **DEFAMATION** |

## THE PARTIES

1. Plaintiff ByDzyne, Inc.("ByDzyne") is a Wyoming corporation.

2. Defendant Samer Yorde ("Yorde") is an individual residing in the State of Florida.

## JURISDICTION

3. This court has subject matter jurisdiction pursuant to 28 U.S.C. 1332 because the plaintiff and defendants are citizens of different states. Specifically,

-1-
COMPLAINT

ByDzyne is incorporated in Wyoming and maintains its principal place of business there. Therefore, ByDzyne is a citizen of Wyoming. On the other hand, Yorde is a citizen of Florida. Also, the amount in controversy exceeds $75,000.

4. Personal jurisdiction in Orange County, California is established by a forum selection clause entered by all parties. Pursuant to such forum selection clause, exclusive jurisdiction to adjudicate the matters that are the subject of this complaint rest in Orange County, California.

5. Furthermore, the parties have agreed that this Court will retain jurisdiction to enforce the settlement agreement that is the subject of this Complaint. Specifically, the settlement agreement states, "[t]he agreed-upon forum and jurisdiction for asserting and defending claims relating to and/or arising out of this Agreement shall be the United States District Court Central District of California Southern Division, to be decided by District Judge David O. Carter (the "District Court"). The District Court shall retain jurisdiction to enforce the terms of this Agreement." A copy of the settlement agreement is attached as **Exhibit "A."**

## FACTS COMMON TO ALL CAUSES OF ACTIONS

6. ByDzyne is a company that markets its products worldwide through the multilevel marketing model (sometimes referred to as network marketing).

7. Like other multilevel marketing ("MLM") companies, ByDzyne markets and sells its products through a network of independent distributors who are remunerated pursuant to a "Compensation Plan," which provides for a structured series of rankings, commissions, and bonuses based upon the distributor's sales volume and the sales of distributors placed beneath them.

8. In the ByDzyne system, the independent distributor is known as a Brand Ambassador. Yorde was a Brand Ambassadors of ByDzyne until their termination on September 10, 2023.

9. In or around October 4, 2023, ByDzyne filed an action against Yorde in this Court alleging, among other things, defamation, breach of contract, and tortious interference. That case was styled, *ByDzyne, Inc. v. Samer Yorde et. al.*, Case No. 2:23-cv-08342.

10. Subsequently, the parties resolved their differences and entered a settlement agreement (the "Settlement Agreement") on November 7, 2023.

11. According to the terms of the Settlement Agreement, Yorde agreed to "not disparage and/or defame ByDzyne or any of its employees, officers, shareholders, vendors, independent contractors, brand ambassadors ('ByDzyne independent distributors') or agents. This injunction applies whether the statements are made in person, videos, audios, on any and all social media platforms, by email, by telephone, or by any electronic form of communication."

12. After executing the Settlement Agreement, Yorde proceeded to hold a Zoom call with a ByDzyne Brand Ambassador named Jonny Michael Miranda Reategui. The Zoom call was held on November 20, 2023.

13. During that call, Yorde made, among others, the following statements about ByDzyne, its products, and/or its officers:

   a. That ByDzyne's product "Pip Grabber" has led to "hundreds of accounts" being burned." In other words, Yorde was claiming that ByDzyne's customers have lost a lot of money using its product.

   b. That ByDzyne is losing customers at a rapid rate, stating that "there aren't a thousand clients left anymore. There are probably hundreds."

   c. That ByDzyne's owners "lied" to Mr. Reategui about the money they've earned in the past. That ByDzyne's owners should not be trusted because they have failed to get a 'single leader" in the state/country they reside in.

   d. That ByDzyne pays its distributors additional compensation to convince them not to leave the company – in other words, buying them off.

   e. That ByDzyne's Compensation Plan is "terrible."

   f. That ByDzyne is "deceptive" in its marketing.

14. The statements referenced above were both disparaging and defamatory to ByDzyne.

15. By making the foregoing statements, Yorde breached the Settlement Agreement.

16. As such, ByDzyne has suffered damage.

## COUNT 1

## BREACH OF WRITTEN CONTRACT

### (By ByDzyne against Yorde)

17. ByDzyne incorporates all preceding paragraphs as though fully set forth herein.

18. ByDzyne and Yorde entered a written contract called the Settlement Agreement.

19. A copy of the Settlement Agreement is attached here as **Exhibit "A."**

20. According to the terms of the Settlement Agreement, Yorde agreed to "not disparage and/or defame ByDzyne or any of its employees, officers, shareholders, vendors, independent contractors, brand ambassadors ('ByDzyne independent distributors') or agents. This injunction applies whether the statements are made in person, videos, audios, on any and all social media platforms, by email, by telephone, or by any electronic form of communication."

21. Yorde breached the Settlement Agreement by disparaging and defaming ByDzyne as described above.

22. Yorde was not excused from his obligations under the Settlement Agreement.

23. ByDzyne has performed all obligations required by it under the terms of the Settlement Agreement.

24. As a result of Yorde's breach, ByDzyne has been damaged in an amount to be proven at trial.

## COUNT 2
## DEFAMATION
### (By ByDzyne against Yorde)

25. ByDzyne incorporates all preceding paragraph as though fully set forth herein.

26. Yorde made defamatory statements against ByDzyne as discussed above.

27. The statements were false and had an adverse impact on ByDzyne's reputation and credibility.

28. The statements were unprivileged.

29. As a result of the defamatory statements, ByDzyne has been damaged in an amount to be proven at trial.

30. The actions and conduct of Yorde were despicable and show a conscience disregard for the rights of others. Therefore, in addition to any compensatory damages, ByDzyne is entitled to a judgment of punitive and exemplary damages against Yorde.

///

///

# **PRAYER FOR RELIEF**

ByDzyne requests the following relief:

1. For compensatory damages in an amount to be proven at trial;

2. For its reasonable attorney fees and costs pursuant to the terms of the Settlement Agreement;

3. For punitive damages; and

4. For all other relief as the Court may find just and proper.

DATED: December 18, 2023              **WELLMAN & WARREN**

            By: */s/ Chris Wellman*
              Chris Wellman
              Attorneys for Plaintiff,
              ByDzyne, Inc.

# EXHIBIT A

# SETTLEMENT AGREEMENT

This settlement agreement (the "Agreement") is entered by and between ByDzyne, Inc. ("ByDzyne"), and Samer Yorde ("Yorde"), Paula Landino ("Landino"), and Servicios Millonarios, LLC ("SM") (Yorde, Landino, and SM are collectively referred to as the "Defendants") (ByDzyne and the Defendants shall collectively be referred to as the "Parties.")

## RECITALS

- WHEREAS, ByDzyne filed suit against Defendants on October 4, 2023, in Case No. 2:23-cv-08342; *ByDzyne, Inc. v. Samer Yorde, et. al.* in the United States District Court, Central District of California (the "Lawsuit"), alleging breach of contract, defamation, interference with contractual relations, interference with prospective advantage, and indemnification; and

- WHEREAS, while each party expressly denies any and all liability for matters asserted against it by the other and acting solely for the purpose of compromising and settling the above-described dispute and to avoid the costs and uncertainties of litigation, the parties desire to enter into a final compromise and settlement of any and all claims and causes of action of every kind and nature whatsoever, both to person and property, known and unknown, which have arisen or could have arisen in the past or that could arise in the future concerning the agreements between the parties, and/or the allegations and claims made in the above-referenced Lawsuit and hereby agree to settle their disputes as set forth herein.

## RELEASE AND DISCHARGE

For and in consideration of the recitals set forth above and for the consideration expressed herein, the Parties hereto mutually agree as follows:

1. **Release by ByDzyne**: ByDzyne hereby releases, acquits and forever discharges Defendants and their agents, attorneys, employers, consultants, affiliates, officers, directors, employees, representatives, insurers, successors, assigns, administrators and any and all other persons and entities under their control and/or direction, or acting in active concert and participation with them from any disputes and differences or any cause of action, that were or could have been asserted in the Lawsuit through the date of this Agreement. ByDzyne further declares any causes of action and any potential causes of action arising from the Lawsuit fully satisfied, settled, released and discharged, and this Agreement is specifically intended to cover all of ByDzyne's damages, known or unknown, through the date of this Agreement, which were or could have been asserted in connection with the Lawsuit.

2. **Release by Defendants**: Defendants hereby releases, acquits and forever discharges ByDzyne and its shareholders, agents, attorneys, employers, consultants, affiliates, officers, directors, employees, representatives, insurers, successors, assigns, administrators and any and all other persons and entities under their control and/or direction, or acting in active concert and participation with them from any disputes and differences or any cause of action, that were or could have been asserted in the Lawsuit through the date of this Agreement. Defendants further declare any causes of action and any potential causes of action arising from the Lawsuit fully satisfied, settled, released and discharged, and this Agreement is specifically intended to cover

all of Defendants' damages, known or unknown, through the date of this Agreement, which were or could have been asserted in connection with the Lawsuit.

3. **Civil Code Section 1542 Waiver**: Effective upon full performance of this Agreement, the Parties hereby knowingly waive all right to application and/or enforcement of Section 1542 of the Civil Code of the State of California which provides as follows:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

All Parties knowingly waive application of the above provision in order to effectuate a full, complete and final resolution to all disputes between them existing as of the date of this Settlement Agreement, by and between the Parties.

4. **Injunctive Relief**: The Parties agree that the following injunctive relief shall be imposed on Defendants as part of this Agreement:

   a. Defendants, either directly, indirectly, or in concert with any third party, shall permanently not disparage and/or defame ByDzyne or any of its employees, officers, shareholders, vendors, independent contractors, brand ambassadors ("ByDzyne independent distributors") or agents. This injunction applies whether the statements are made in person, videos, audios, on any and all social media platforms, by email, by telephone, or by any electronic form of communication.

b. That, through September 10, 2025, Defendants, either directly, indirectly, or in concert with any third party, shall not solicit any ByDzyne independent distributor to join and/or participate in any other multi-level marketing company, direct sales company, network marketing company, affiliate program, or any FX brokers trading accounts. For avoidance of doubt, the term "solicit" shall mean to directly contact ByDzyne independent distributors in person, through text message, email, telephone, WhatsApp messaging, social media direct messaging, Telegram messaging, or any other similar types of electronic messaging. The term "solicit" shall not include communications by Defendants that were made in response to an initial inquiry by a ByDzyne independent distributor who was seeking to learn more about another multi-level marketing company, direct sales company, network marketing company, or affiliate program as long as Defendants did not cause such initial solicitation through the sources mentioned above.

c. Within 24 hours of the date of executing this injunction by the parties, Defendants shall remove and/or take down all prior or current social media posts regarding ByDzyne that were made on any of Defendants' social media accounts. "Regarding ByDzyne" includes references to the Defendants' prior company or other such general description which makes it reasonably clear that they are referring to ByDzyne. If a post has not been removed by such date, ByDzyne shall provide notice of the post, in which event Defendants shall remove the post no later than twenty-four (24) hours of receiving such

    notice. Notice shall be made to paulalandino@gmail.com and sameryorde@gmail.com.

d. Within 24 hours of the date of executing this injunction by the parties, Defendants shall terminate all channels, WhatsApp and Telegram accounts in which they used to promote ByDzyne's products and/or services (the "Accounts"). Defendants, either directly, indirectly, or in concert with any third party, shall not indicate on the Accounts why the Accounts are being terminated. Also, Defendants, either directly, indirectly, or in concert with any third party, shall not use the Accounts to redirect, suggest, or influence its participants to join or switch to another account or platform intended for electronic communication.

e. Defendants, either directly, indirectly, or in concert with a third party, shall not use, employ, or misappropriate ByDzyne's confidential and proprietary information. Confidential and proprietary information shall be defined as information and reports that was provided to Defendants regarding ByDzyne's business, products, volumes, sales data, trade secrets, intellectual property, its network, identity and contact information on ByDzyne's distributors and customers, and sales information.

The injunction agreed to by the Parties is attached hereto as **Exhibit "A"** (the "Permanent Injunction").

5. **<u>Dismissal and Filing of Injunction</u>**: Within five (5) days of execution of this Agreement, ByDzyne shall file: (1) a motion to dismiss without prejudice all claims

by and between ByDzyne and Defendants in the Lawsuit; and (2) all necessary closing documents in the Lawsuit, including the filing of the Permanent Injunction.

## MISSCELANOUS TERMS

6. **Costs**:  The Parties shall bear their own respective costs, including attorney's fees, in connection with the Lawsuit and this Agreement.

7. **Good Faith/Cooperation**:  The Parties represent and warrant that this Agreement is entered into in good faith.  The Parties further agree and promise to reasonably cooperate with respect to the preparation and execution of any and all documents necessary to effectuate the terms of this Agreement.

8. **Advice of Counsel**:  This Agreement is freely given and voluntarily executed by the Parties, the Parties hereto having discussed and considered all relevant information and/or advice furnished by their respective attorneys, and each of the Parties hereby warrants that they have for themselves read and understood each and every provision of this Agreement.

9. **Full and Final Agreement**:  None of the Parties hereto relied on any inducements, promises or representations in agreeing to settlement other than those set out in this Agreement, which constitutes the entire integrated understanding of said Parties. This Agreement contains the entire agreement between the Parties hereto with no promise, inducement or agreement not expressly contained herein being made.

10. **Construction**:  This Agreement shall be construed as if all Parties hereto, and each of them, prepared it, and any uncertainty and/or ambiguity shall not be interpreted to favor any one of the Parties over any or all of the other Parties.  Should any portion,

word, clause, phrase, sentence or paragraph of this Agreement be declared void and/or unenforceable, such portion, word, clause, phrase, sentence, or paragraph shall be considered independent and severable from the remainder, and the validity of the balance of this Agreement shall remain in effect and enforceable.

11. **Enforcement**:  If there is any action or proceeding required as a result of a breach or failure to perform this Agreement, the prevailing party will be entitled to recovery of any and all reasonable attorney's fees and all costs incurred in connection with the enforcement and collection respecting any breach or failure to perform the Agreement.

12. **Governing Law and Forum**: This Agreement shall be construed and interpreted under and according to the laws of the State of Wyoming. The agreed-upon forum and jurisdiction for asserting and defending claims relating to and/or arising out of this Agreement shall be the United States District Court Central District of California Southern Division, to be decided by District Judge David O. Carter (the "District Court"). The District Court shall retain jurisdiction to enforce the terms of this Agreement.

13. **Binding Agreement**:  All terms of this Agreement shall be binding upon, and inure to the benefit of, and be enforceable by, the Settling Parties hereto, each Settling Parties' respective legal representatives, and each Settling Parties' successors and assigns. Each of the Settling Parties executing this Settlement Agreement represents and warrants that they accept and agree to the provisions contained in this Settlement Agreement, and hereby execute it voluntarily and with a full understanding of its

consequences.

14. **Sole Authority**: The Parties represent and warrant that they have the sole, undivided, and exclusive right and authority to execute this Agreement, and that they have not sold, assigned, transferred, conveyed or otherwise disposed of any of their respective rights, claims, demands, obligations, or causes of action referred to in the Lawsuit and/or this Agreement. The Parties also further warrant that they are of legal age and are legally competent to execute this Agreement.

15. **Counterpart Execution**: This Agreement may be executed in counterparts with the same force and effect as if all signing Parties had executed the same original thereof, and facsimile and/or e-mail copies of true and correct signatures to this Agreement shall have the same force and effect as the originals.

IN WITTNESS WHEREOF, the Parties hereto have affixed their signatures as of the date opposite their names.

DATED: November 2, 2023

BYDZYNE, INC.

By: _____
Sophia Wong
Title: President

DATED: November __, 2023

**SAMER YORDE**

By _____
Samer Yorde

DATED: November __, 2023

**PAULA LANDINO**

By:_____
    Paula Landino

DATED: November __4__, 2023      **SERVICIOS MILLONARIOS, LLC**

By:_____
Samer Yorde
Title: